# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EDDIE NUNEZ,

    *Plaintiffs,*

vs.

   Case No.  15-3259-EFM-DJW

JAMES HEIMGARTNER, et al.,

    *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Eddie Nunez is an inmate in the custody of the Kansas Department of Corrections ("KDOC").  In January 2015, he battered a female corrections officer at the Hutchinson Correctional Facility ("HCF").  Following that incident, Nunez was seized, placed in a holding cell, and later transferred to the El Dorado Correctional Facility ("EDCF") where he was placed on restricted status.  Nunez claims that during that course of events, several of his constitutional rights were violated.  Accordingly, he brings this action under 42 U.S.C. § 1983 against several KDOC employees.  Six of those defendants now move for summary judgment, arguing that the Eleventh Amendment bars Nunez's action against them in their official capacities (Doc. 55).  They also contend that Nunez is barred from bringing this action against them in their individual capacities because he failed to exhaust his administrative remedies before filing his Complaint.  Another defendant, Nurse Deanna Morris, also seeks summary

judgment on Nunez's claim against her (Doc. 59). She claims that the undisputed facts show that she did not violate any of Nunez's constitutional rights.

For the reasons stated below, the Court agrees that Nunez cannot move forward in this case against state officials in their official capacities. However, in light of facts sworn to by Nunez in his Complaint, factual disputes preclude summary judgment on the Defendants' other claims.

## I.      Factual and Procedural Background

Eddie Nunez is an inmate in the custody of KDOC. Nunez, acting pro se, brings this action under 42 U.S.C. § 1983 alleging violations of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. These violations all stem from Nunez's battery of a female corrections officer in January 2015, and his subsequent transfer from HCF to EDCF.[1] According to Nunez, he was subjected to excessive force and was mistreated in various ways following the battery.

In his Complaint, Nunez names 14 defendants. Of those defendants, 13 are KDOC employees at either HCF or EDCF; the other is Corizon Health Services. The following defendants now seek summary judgment on procedural grounds: James Heimgartner, the Warden at EDCF; Tammy Martin-Mosley, a Unit Team Manager ("UTM") at EDCF; Kevin Vick, a UTM at EDCF; William Widener, a corrections officer at HCF; Roland Potter, a corrections officer at HCF; and Allison Plett, a corrections officer at HCF (collectively "the Defendants"). Additionally, another defendant, EDCF Nurse Deanna Morris, seeks summary judgment on the merits.

---

[1] In his Complaint, Nunez refers to an "alleged assault," but he has since been tried and convicted of felony battery of a correctional officer. He is currently awaiting sentencing for that offense.

After Nunez filed this action, the Court screened the case, pursuant to 28 U.S.C. § 1915A.  Judge Crow's screening order, dated May 16, 2016, laid out Nunez's allegations as follows:

> Plaintiff alleges that on January 13, 2015 at approximately 9:21 p.m., he was suspected of assaulting a female correctional officer at HCF. He claims that, acting upon these suspicions, defendants Shmucker, Lansaw and [Widener] rushed at him, handcuffed him, and applied excessive force against plaintiff, although plaintiff offered no resistance. Plaintiff claims that his head was bashed to the floor, his arms were violently jerked back, and he was purposefully rammed into a metal pole and a metal door.
>
> Plaintiff was placed in a holding cell. Plaintiff states that he was dizzy and extremely nauseous and told defendant Plett that he needed to see the nurse. Plaintiff was in the holding cell for about an hour and then he was escorted to a "box car slam cell," where he spent the night. This cell had no bedding and no toilet paper. There was a mattress. Plaintiff was only permitted a pair of boxer shorts and a t-shirt. There were no blankets, although the cell was freezing cold. Plaintiff states that he threw up twice because of dizziness and never received medical attention. Plaintiff asserts that shift captain Potter, who "authorized, supervised, and instructed his subordinates to execute his orders," and defendant Plett, who "knowingly, willfully, and with malicious intent to retaliate denied my right to possess toilet paper . . . clean bedding and blankets . . . [and] right to clothing . . . heating . . . and right to receive medical treatment," are responsible for these alleged violations.
>
> Early on the morning of January 14, 2015, plaintiff was transported in a van to EDCF. Before the trip, plaintiff's tennis shoes were confiscated and thrown away. He was allowed to wear only boxers and a t-shirt. He was also placed in a shock vest and threatened that he would get severely shocked with 50,000 volts if he gave the officers any excuse. The van was very cold. Plaintiff alleges that he was terrified to complain about the cold, even though he was shivering uncontrollably. Plaintiff alleges that there was a driver and a passenger in the van and that the driver ignored plaintiff's request to turn up the heat in the van and threatened to shock plaintiff.
>
> Plaintiff alleges that when he arrived at EDCF, his clothes were taken and he was placed totally naked in a holding cell. One of the correctional officers involved was defendant Leonard Maddox. Plaintiff was in the holding cell for one hour and then moved to a limited contact cell. Plaintiff received a pair of boxer shorts, a t-shirt and crocs before being moved. He was shackled tightly around his ankles. Plaintiff alleges that defendant Maddox and defendant Vick were involved in moving plaintiff. While this was happening, plaintiff claims that defendant

Maddox pulled plaintiff's thumb backwards as hard as he could, causing plaintiff extreme pain. Plaintiff also claims that the shackles cut into his ankles so that plaintiff bled. No medical attention was offered. Plaintiff arrived at the limited contact cell at 8:30 a.m. Plaintiff was left with a pair of boxers only. No t-shirt or shoes. There was no mattress or bedding in the cell. The cell was extremely cold and drafty. Plaintiff alleges that he could see his breath. The officers removed toothpaste and toilet paper that were used to fill cracks in the door to stop the draft. Defendant Maddox and defendant Vick were involved in placing plaintiff in the limited contact cell. Defendant Martin issued the orders which limited the property plaintiff had in the cell.

Plaintiff allegedly suffered in these conditions until about 3:30 p.m. when he received a mattress, a set of clothing, bedding and one blanket, legal work, and reading and writing materials, but no shoes. Plaintiff alleges that he was enduring bronchitis during this time and had coughing fits.

Plaintiff states that he received ibuprofen and antibiotic ointment for his injuries. He claims that he filed a grievance regarding excessive force, but that defendant Martin-Mosley lied in response to it. Plaintiff alleges generally that defendant Martin-Mosley denied plaintiff's due process rights by failing to follow Kansas Department of Corrections policies and protocol.

Plaintiff further asserts that he was going through severe drug withdrawal on January 15, 2015, but that defendant Morris told him there was nothing she could do about it. She did not take plaintiff's vitals to assess his condition. Plaintiff claims that he later resubmitted two additional sick call requests about his drug withdrawal symptoms, but was denied treatment by defendants Morris, Corizon and Martin-Mosley. He asserts that defendant Martin-Mosley offered to provide plaintiff with treatment if he made a statement about the assault incident at HCF. Plaintiff refused, however.

Plaintiff states that on January 15, 2015, defendant Martin-Mosley revoked plaintiff's access to any legal work, books, magazines and writing materials. Plaintiff claims this violated regulations. Plaintiff states that the restrictions were adjusted on January 27, 2015 and plaintiff was allowed more blankets, shoes, legal work, books, magazines, writing material and money to spend for stamps. The next day, however, plaintiff was restricted from using cellhouse showers and razors to shave. He was also barred from out of cell exercise from January 14, 2015 until February 25, 2015. Plaintiff claims that defendant Martin-Mosley has abused her discretion and violated plaintiff's due process and equal protection rights in enforcing these restrictions.

Plaintiff asserts that he did not receive a hearing before being placed in administrative segregation and that he did not receive reviews after he was placed

in administrative segregation, contrary to regulations. Plaintiff claims this violated his due process rights.

Finally, plaintiff contends that defendant Heimgartner is legally liable because he was the warden for EDCF and in charge of training and supervision. Plaintiff asserts that there has been a record of deliberate indifference to excessive force violations, a failure to discipline and sanction subordinates for excessive force, and a practice of condoning such behavior. Plaintiff alleges that defendant Heimgartner has ignored plaintiff's grievances and been deliberately indifferent to plaintiff's excessive force claims.

Based on this alleged conduct, Nunez asserts 10 claims in his Complaint. Count I alleges excessive force relating to the corrections' officers response to Nunez's battery of the female corrections officer. Count II alleges cruel and unusual punishment arising from the deprivation of adequate clothing, bedding, heating, and the denial of care while he was held in the "box car slam cell." Count III alleges cruel and unusual punishment arising from the threats of excessive force and deprivation of property and clothing during transport from HCF to EDCF on the morning of January 14. Count IV alleges excessive force as well as cruel and unusual punishment arising from his treatment upon arrival at EDCF. Count V alleges cruel and unusual punishment arising from deprivation of shelter and clothing in deliberate indifference to his health upon arrival at EDCF. Count VI alleges that Martin-Mosley committed perjury and violated protocol in violation of the Fourteenth Amendment. Count VII alleges that Morris violated Nunez's Eighth, Fourteenth, and Fifth Amendment rights by denying him treatment for his drug withdrawals. Count VIII alleges that Martin-Mosley violated Nunez's Fourteenth Amendment rights by depriving him of access to legal work, reading materials, and other items that other inmates were allowed to access. Count IX alleges a violation of due process rights because he was placed in administrative segregation without a hearing, and that decision has not been reviewed. Finally, Count X sets forth a failure to train claim against Heimgartner.

Following the battery of the corrections officer—which occurred on January 14, 2015—Nunez completed several forms related to his alleged grievances. On January 23, Nunez completed a Form 9, which is part of the informal resolution process between an inmate and a UTM. He received an undated response to his Form 9 grievance. On February 4, Nunez completed a formal inmate grievance form, alleging excessive force, cruel and unusual punishment, and cold conditions at EDCF and HCF. On February 19, Nunez wrote a letter airing these grievances to Heimgartner, noting that he had not heard back from his UTM, and that his attempts to resolve the matter were being ignored. And on March 10, Nunez mailed a grievance appeal to KDOC. In that appeal, Nunez stated that both Martin-Mosley and Heimgartner had failed to respond to his attempts to file a formal grievance at EDCF. He also attached the February 4 grievance form and the February 19 letter to the warden to his appeal. Nonetheless, KDOC responded, informing Nunez he had failed to provide evidence that he complied with the formal grievance policy prior to his appeal.

The Defendants assert that while Nunez may have completed the above forms, he did not properly submit them. An appealable grievance is assigned a serial number, but the March 10 document that Nunez sent to KDOC was unnumbered. Trudi Temple, the custodian of inmate grievance records at EDCF, maintains that from January through November of 2015, there is no record of any formal or informal grievances submitted by Nunez regarding the allegations surrounding the January 2015 incident. The *Martinez* report, filed in this case on November 23, 2016, similarly reports that KDOC received Nunez's March 10 grievance appeal, but that "it appears [Nunez] never exhausted his administrative remedy or proceeded further with the grievance."

Although the above evidence suggests that Nunez failed to submit any complaints prior to his March 10 appeal, it appears that his February 4 grievance form did reach Martin-Mosley, because she responded to it on April 3. In that response, she disagreed with Nunez's allegations of mistreatment. It does not appear that Nunez appealed Martin-Mosley's determination to Heimgartner.[2]

On November 16, 2015, Nunez filed this § 1983 action seeking money damages. In his screening order, Judge Crow dismissed the entirety of Counts IV and IX, as well as the loss of property claim contained in Count III. Judge Crow also dismissed two parties—Sam Kline and Corizon Health Services—as defendants. Furthermore, Judge Crow ordered that the appropriate officials of HCF, EDCF, and KDOC prepare and file a *Martinez* report relating to Nunez's allegations. Finally, Judge Crow denied without prejudice Nunez's motion for the appointment of counsel.

Now before the Court are two motions for summary judgment. Defendants Heimgartner, Martin-Mosely, Plett, Potter, Vick, and Widener argue that Nunez's suit against them in their official capacities is barred by the Eleventh Amendment doctrine of sovereign immunity. Further, they argue that they are entitled to judgment because Nunez failed to exhaust his administrative remedies (Doc. 55). Defendant Deanna Morris also seeks summary judgment (Doc. 59), but her motion focuses on the merits. She contends that the facts show that she was not deliberately indifferent to Nunez's medical needs. Nunez has failed to timely respond to either motion, and they are both ripe for the Court's determination.

---

[2] It is worth noting that by the time Martin-Mosley responded the Nunez's first formal grievance, he had already moved on and submitted that grievance to both Heimgartner and KDOC.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[3] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[4]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[5]  If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[6]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[7]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[8]

Nunez is proceeding pro se.  The Court therefore reviews his pleadings, including those related to Defendants' motion, "liberally and holds them to a less stringent standard than those drafted by attorneys."[9]  The Court, however, cannot assume the role of advocate for the pro se

---

[3] Fed. R. Civ. P. 56(c).

[4] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[6] *Id.* (citing Fed. R. Civ. P. 56(e)).

[7] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[8] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[9] *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (quotations omitted).

litigant.[10]  Likewise, Nunez's pro se status does not relieve him from the obligation to comply with procedural rules, including the Federal Rules of Civil Procedure.[11]

### III.    Analysis

### A.    Official Capacity Claims

Defendants Heimgartner, Martin-Mosley, Plett, Potter, Vick, and Widener are all employed by the state.  Specifically, they are all employed by KDOC at either EDCF or HCF. "When a suit alleges a claim against a state official in his official capacity, 'the real party in interest in the case is the state, and the state may raise the defense of sovereign immunity under the Eleventh Amendment.' "[12]  Here, Nunez's only requested relief is for monetary damages. And "[i]t is well-settled that a request for money damages against a state defendant in his official capacity is generally barred by the Eleventh Amendment."[13]  While the defense of sovereign immunity may be waived, Kansas has not done so with regard to § 1983 prisoner claims in federal courts.[14]  Accordingly, sovereign immunity bars Nunez's claims against state officials in their official capacities.

Although only Heimgartner, Martin-Mosley, Plett, Potter, Vick, and Widener moved for summary judgment on these grounds, sovereign immunity partakes the nature of a jurisdictional

---

[10] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").

[11] *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2002).

[12] *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006) (quoting *Branson v. Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998)).

[13] *Hunter v. Young*, 238 F. App'x 336, 338 (10th Cir. 2007).

[14] *Id.*

bar.[15]  And so the Court may, in its discretion, raise the issue of Eleventh Amendment immunity sua sponte.[16]  Because the issue of sovereign immunity has been effectively raised by these six defendants, the Court will apply its reasoning to the remaining defendants in this case.[17]  Nunez is barred from bringing this action against any defendants in their official capacity.

**B.      Failure to Exhaust Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust "such administrative remedies as are available" before initiating suit over prison conditions.[18]  "[A]n inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure."[19]  On its face, Nunez's Complaint seeks relief under § 1983.  But liberally construing Nunez's filings, some of his alleged facts could also support a personal injury claim. The KDOC provides separate procedures for § 1983 and personal injury claims.[20] "This means that an inmate who wishes to pursue both a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his claims on a single act."[21]  And so the Court will look at the administrative steps for each claim to determine whether Nunez properly exhausted his administrative remedies before filing the Complaint in this case.

---

[15] *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 683 n.18 (1982).

[16] *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017).

[17] *Harris v. Owens*, 264 F.3d 1282, 1288 (10th Cir. 2001) ("Once effectively raised, the Eleventh Amendment becomes a limitation of our subject-matter jurisdiction.").

[18] 42 U.S.C § 1997e(a).

[19] *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010).

[20] *See Lewis v. Carrell*, 2014 WL 4450147, at *5-6 (D. Kan 2014).

[21] *Id.* at *6.

*1.    Nunez's § 1983 Claim*

Article 15 of the KDOC regulations covers the administrative procedures that must precede a § 1983 claim.[22]  An inmate must first seek an informal resolution with personnel that he works with on a daily basis.[23]  If the attempt at an informal resolution fails, the inmate may resort to the three-step formal grievance system.[24]  At level one, the inmate must submit a grievance report form to the appropriate UTM.[25]  At level two, the inmate submits the grievance report form the warden of the facility—in this case, Heimgartner.[26]  And if the matter is still unresolved, at level three the inmate may appeal the grievance to KDOC.[27]  "At each stage, all grievances shall be answered in as short a time as possible to insure that delay will not impose additional hardship upon the inmate or unnecessarily prolong a misunderstanding."[28]  Grievances must be filed within 15 days from the date of the event of the event giving rise of the grievance, excluding Saturdays, Sundays, and holidays.[29]  Also, under Article 15 an "inmate may move to the next stage of the grievance procedure if a timely response is not received at any step in the grievance process."[30]

---

[22] *Id.* at *7.

[23] K.A.R. § 44-15-101(b).

[24] K.A.R. § 44-15-101(b).

[25] K.A.R. § 44-15-101(d)(1).

[26] K.A.R. § 44-15-101(d)(2).

[27] K.A.R. § 44-15-101(d)(3).

[28] K.A.R. § 44-15-101(c).

[29] K.A.R. § 44-15-101b.

[30] K.A.R. § 44-15-101b.

The record shows that Nunez attempted to informally resolve his grievance by submitting a Form 9. But the Defendants argue that Nunez failed to follow the formal grievance steps set forth in Article 15, and thus, failed to exhaust his administrative remedies before filing his Complaint. They assert that "[t]here is simply no record at EDCF that the plaintiff ever submitted either the February 4, 2015, formal grievance form . . . or the letter to Warden Heimgartner, dated February 19, 2015." The Defendants cite the custodian of records at EDCF, who maintains that the forms were never officially filed. But the Court is not convinced that the record is so clear.[31]

The Defendants assert that Nunez never submitted the February 4 grievance form. Yet on April 3, Martin-Mosley responded to that very document. How could Martin-Mosley have responded to a grievance that was never submitted? Viewing the facts in the light most favorable to Nunez, this apparent contradiction casts doubt onto the Defendants' unqualified claim that Nunez never filed a formal grievance before he filed his Complaint. Along with this incongruity, Nunez's Complaint also controverts the Defendants' assertion that he failed to exhaust his administrative remedies.

When sworn and made under the penalty of perjury, a pro se prisoner's complaint is treated as an affidavit.[32] Here, Nunez swore under penalty of perjury that the statements contained in his complaint were true and correct. Accordingly, the Court can consider his Complaint and its attachments as part of the summary judgment record.[33] In his Complaint,

---

[31] 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2725.2, 437-38 (4th ed. 2016) ("In short, summary judgment will be granted only in clear cases.").

[32] *Spurlock v. Simmons*, 88 F. Supp. 2d 1189, 1191 (D. Kan. 2000) (citing *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)).

[33] *Lewis*, 2014 WL 4450147, at *3.

Nunez alleges that he used administrative procedures available at EDCF, but his grievance went unresolved. Specifically, he claims that he submitted a grievance form to his UTM on February 4, which went unanswered.[34] Receiving no response in 10 days, he proceeded to file a grievance with Heimgartner. Again, Nunez contends that he received no response within 10 days. Accordingly, Nunez claims that on March 10, he submitted his grievance to KDOC.

All told, the Defendants have presented evidence suggesting that Nunez failed to exhaust his administrative remedies while Nunez has presented evidence suggesting that he had. Accordingly, there is a genuine dispute as to whether Nunez completed the administrative steps set forth in Article 15.

Alternatively, the Defendants argue that even if Nunez did submit the grievance forms, they were untimely. They contend that under § 44-15-101b, Nunez was required to file the grievance within 15 days of the event giving rise to the grievance. Therefore, the Defendants argue that because the alleged events occurred around January 14, Nunez was required to file the grievance by January 29 at the latest. This argument is misplaced for two reasons. First, it ignores Nunez's allegations. One of his primary complaints is that he was restricted from possessing legal work or writing materials from the time of the battery until January 27. He does not simply allege one constitutional violation occurring on one day; rather, he alleges a plethora of violations—some more plausible than others—occurring from January 14 through January 27. Thus, accepting Nunez's facts and viewing them in a light most favorable to him, it is not entirely clear that KDOC's 15-day deadline started running on January 14 in this case.

---

[34] This allegation is supported by the Defendants' evidence, which shows that it took two months for Martin-Mosley to respond to Nunez's first grievance.

Second, the Defendants' argument ignores the rest of § 44-15-101b. That regulation provides that "[g]rievances shall be filed within 15 days from the date of the discovery of the event giving rise to the grievance, *excluding Saturdays, Sundays and holidays.*"[35] In their calculations, the Defendants failed to exclude the weekends. February 4, 2015, is exactly 15 weekdays after January 14, 2015. Therefore, even if Nunez's clock did start running on January 14, under § 44-15-101b, a February 4 filing would have been timely. And indeed, from there Nunez asserts that he continued to comply with the deadlines set forth in § 44-15-101b. That regulation provides that "[a]n inmate may move to the next stage of the grievance procedure if a timely response is not received at any step in the grievance process."[36]

Finally, the Defendants argue that Nunez failed to exhaust his administrative remedies because he failed to complete the grievance process. In support of this argument, the Defendants cite Tenth Circuit authority holding that an inmate has failed to exhaust his administrative remedies where he begins, but does not finish, the grievance process.[37] The Defendants argue that Nunez has failed to exhaust his administrative remedies by refusing to act on KDOC's response to his March 10 appeal. They contend that Nunez was given an opportunity to cure his deficient grievance, but failed to do so. And so, the Defendants argue that Nunez has failed to exhaust his administrative remedies.[38] The Court disagrees.

---

[35] K.A.R. § 44-15-101b (emphasis added).

[36] K.A.R. § 44-15-101b. Under Nunez's facts, the same cannot be said for his UTM and warden. *See* K.A.R. § 44-15-101(c) ("At each stage, all grievances shall be answered in as short a time as possible to insure that delay will not impose additional hardship upon the inmate or unnecessarily prolong a misunderstanding.").

[37] *See Pusha v. Myers*, 608 F. App'x 612 (2015); *Jernigan v. Stuchell*, 304 F.3d 1030 (10th Cir. 2002).

[38] *Jernigan*, 304 F.3d at 1032-33 (finding that a prisoner had failed to exhaust his administrative remedies where he was given ten days to cure a deficiency but failed to do so).

Article 15 lays out a three step process for a prisoner to file a formal grievance. Nunez was required to file a grievance with his UTM, then the warden, and finally, with KDOC. He asserts that he did so. The Tenth Circuit has held that a prisoner has failed to exhaust his administrative remedies when he is given an opportunity to cure a deficient grievance, but fails to do so.[39] That is not the case here. In its response to Nunez's March 10 appeal, KDOC did not give Nunez an opportunity to cure his deficient grievance. Rather, KDOC simply informed him that he failed provide evidence of compliance, and forwarded his grievance onto Heimgartner. Nunez was not provided leave to correct any deficiency or to challenge KDOC's conclusion.[40] Nunez claims that he followed all three steps of Article 15, and at step three he was directed back to step two—where his grievance had gone unanswered.

Nunez avers that he aired his grievance at every level of the prescribed administrative process. At the lower levels he was ignored, and at the highest level, his grievance was forwarded back to the lower level. The PLRA requires the exhaustion of administrative remedies to allow "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."[41] In theory, this requirement should reduce the number of inmate suits and improve their quality.[42] But those goals are not served if an inmate's attempts to resolve a dispute are frustrated and hindered by unresponsive prison officials. Rather, "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will

_____

[39] *Id.*

[40] In fact, if the Court were to accept Nunez's allegations, his grievance was not deficient at all.

[41] *Jones v. Bock*, 549 U.S. 199, 204 (2007).

[42] *Id.*

excuse the prisoner's failure to exhaust."[43]  Nunez asserts that his grievances were ignored at the lowest level, and he was given the run-around at the highest.  And so his allegations support an inference that administrative remedies were unavailable, or at the very least, that he exhausted his administrative remedies to the best of his ability.  Accordingly, the Defendants are not entitled to summary judgment on the claim that Nunez failed to exhaust all available administrative remedies.

For the reasons stated above, factual questions abound regarding the question of whether Nunez properly exhausted his administrative remedies as set forth in Article 15.[44]  Therefore, the Defendants are not entitled to summary judgment on the grounds that he failed to do so.  Nor do the undisputed facts show that Nunez's attempts to exhaust his administrative remedies were untimely.  And finally, there is evidence supporting the inference that Nunez exhausted his administrative remedies to the best of his ability.  Accordingly, the Defendants are not entitled to judgment as a matter of law that Nunez failed to comply with Article 15.  Nunez's § 1983 claim may proceed against the Defendants in their individual capacities.

### 2.     *Nunez's Potential Personal Injury Claim*

Although there is a dispute as to whether Nunez exhausted his administrative remedies with regard to his § 1983 claim, it is clear that he failed to exhaust them with regard to a potential personal injury claim.  Personal injury claims are covered in Article 16 of the KDOC

---

[43] *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2011).

[44] Disputed issues of fact regarding exhaustion under the PLRA are matters of judicial administration that can be decided in a bench trial. *See Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).  Therefore, the Court will hold an evidentiary hearing to resolve these issues and determine whether Nunez properly exhausted his administrative remedies.

regulations.[45]  Under Article 16, an "inmate claim for personal injury shall be submitted to the facility and secretary of corrections within 10 calendar days of the claimed personal injury."[46]  Nothing in the record shows that Nunez submitted a personal injury claim to either the facility or the KDOC within 10 days of the incident.  Thus, to the extent that Nunez is bringing a personal injury claim, he has failed to exhaust his administrative remedies.  The Court grants the Defendants' motion with regard to Nunez's potential personal injury claim.

## C.    Defendant Morris's Motion for Summary Judgment

Defendant Deanna Morris, a nurse at EDCF, moves for summary judgment on Nunez's claim that she failed to treat his drug withdrawal symptoms.  "A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment."[47]  In determining whether a prison official displayed deliberate indifference, the Court looks at both objective and subjective components.[48]  Nunez must first produce objective evidence that the deprivation at issue was sufficiently serious.[49]  "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' "[50]  Morris contends that Nunez complained of withdrawal symptoms but did not exhibit symptoms supporting that assertion.  Nonetheless, she

---

[45] *Vann v. Ash*, 2016 WL 6680997, at *2 (D. Kan. 2016).

[46] K.A.R. § 44-16-104a.

[47] *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

[48] *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

[49] *Mata*, 427 F.3d at 751.

[50] *Sealock*, 218 F.3d at 1209 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999).

claims that he was attended to and treated appropriately. Nunez's Complaint controverts these claims.[51] He characterizes his drug withdrawals as severe, and contends that his kidneys hurt, his heartbeat was erratic, and that he was vomiting. He claims that his pain was so severe that he thought he was dying. If true, a rational juror could determine that a lay person would recognize the need for medical attention. Accordingly, Nunez's facts support the inference of a sufficiently serious medical need.

Where there is a sufficiently serious medical need, and the alleged violation arises from delayed medical care—as it does here—the inmate must show that the delay resulted in substantial harm.[52] "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.' "[53] Morris contends that Nunez complained of withdrawal symptoms on January 15 and was seen the next day by Nurse Nickerson. She further states that he was regularly seen again from January through June. But Nunez contends that when he first complained of drug withdrawal symptoms, Morris told her that "there was nothing she could do about it" and told him that he needed to fill out a separate form to receive treatment. Nunez claims that the pain he was experiencing caused him extreme distress. As a result of his kidney pain, erratic heartbeat, and vomiting, he felt like his "body was shutting down" and claimed that he could not sleep because he felt like he was dying. Ultimately, Nunez alleges that he never received treatment for his drug withdrawals, and was forced to ride them out while other defendants attempted to use the symptoms to coerce a confession regarding the battery of their

---

[51] As noted above, the Court considers Nunez's sworn Complaint as part of the summary judgment record. *See Lewis*, 2014 WL 4450147, at *3.

[52] *Beers v. Ballard*, 248 F. App'x 988, 991 (10th Cir. 2007) (citing *Sealock*, 218 F.3d at 1210).

[53] *Mata*, 427 F.3d at 751 (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

fellow corrections officer. Nunez's allegations support an inference that he suffered from considerable pain while his withdrawal symptoms went untreated.[54] Because Nunez's facts support a sufficiently serious medical need and delayed treatment leading to substantial harm, the Court turns to the subjective prong of whether Morris displayed deliberate indifference to his medical needs.

"The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'"[55] Nunez can satisfy this component by showing that Morris's delay caused either unnecessary pain or a worsening of his condition.[56] Once again, Morris has come forth with facts suggesting that Nunez was not exhibiting symptoms of severe withdrawals and that he was appropriately treated in the months following his battery of the female corrections officer. But Nunez's facts controvert this assertion. Nunez claims that Morris told him that there was nothing she could do and incorrectly referred him to mental health providers. According to Nunez, Morris ignored his requests for treatment and required him to complete unnecessary paperwork. In the end, Nunez never received treatment for his drug withdrawals, and he alleges that he endured substantial pain and discomfort as a result. His facts support an inference of deliberate indifference on the part of Morris. [57]

Factual disputes surround Nunez's claim against Morris. And although Morris' account is supported by the prison's medical records—whose validity the Court has no reason to doubt—

---

[54] *See Kikumura v. Osagie*, 4616 F.3d 1269, 1293 (10th Cir. 2006) (finding that debilitating pain accompanied by vomiting constituted a substantial harm), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *as explained in Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008).

[55] *Sealock*, 218 F.3d at 1209 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

[56] *Mata*, 427 F.3d at 755.

[57] *Id.* at 758-59 (finding an issue of material fact regarding the subjective element where nurse knew of an inmates severe chest pains but told the inmate there was nothing she could do to help).

the Court is still faced with a he-said, she-said account of the treatment surrounding Nunez's drug withdrawals.[58] The Court may only grant summary judgment where there are no genuine disputes as to any material facts.[59] Given the conflicting accounts in this case, summary judgment is inappropriate.

## D.     Appointment of Counsel

When Nunez filed his Complaint, he also moved for the appointment of counsel (Doc. 3), citing his unfamiliarity with the law and the complexity of the case. Judge Crow denied that motion without prejudice, noting that Nunez could renew his request at a later of in the litigation. Now that Nunez has survived summary judgment, the Court will appoint him counsel as he pursues his remaining claims.

## IV.     Conclusion

Because Nunez seeks money damages against state officials, he cannot recover from state officials in their official capacity.  Nunez is also barred from bringing a personal injury claim against the Defendants, because he failed to exhaust the administrative steps required to bring such a claim.  But the Defendants are not entitled to summary judgment on their claim that Nunez failed to exhaust his administrative remedies before bringing his § 1983 claim.  The allegations in Nunez's Complaint, which are part of the summary judgment record, create a genuine issue of material fact as to whether Nunez completed the required administrative steps.

---

[58] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or a directed verdict."); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2725.2, 440 (4th ed. 2016) ("[A] party moving for summary judgment is not entitled to a judgment merely because the facts the party offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.").

[59] Fed. R. Civ. P. 56(a).

Likewise, Nunez's allegations also controvert the facts advanced by Deanna Morris regarding the treatment—or lack thereof—that Nunez received for his drug withdrawals. Accordingly, the Court grants in part and denies in part the Defendants Heimgartner's, Martin-Mosley's, Plett's, Potter's, Vick's, and Widener's Motion for Summary Judgment (Doc. 55). And the Court denies Morris' Motion for Summary Judgment (Doc. 59). Furthermore, the Court will appoint counsel to represent Nunez for the remainder of this case.

**IT IS THEREFORE ORDERED** that the Defendants' Motion for Summary Judgment (Doc. 55) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Defendant Morris' Motion for Summary Judgment (Doc. 59) is **DENIED.**

**IT IS FURTHER ORDERED** that counsel be appointed to represent Nunez in this matter. A separate order will be issued naming the counsel to be appointed.

**IT IS SO ORDERED**.

Dated this 24th day of May, 2017.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE