IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EDDIE NUNEZ,

    *Plaintiff,*

vs.

JAMES HEIMGARTNER, ET AL.,

    *Defendants.*

Case No. 15-CV-3259-EFM

**NUNC PRO TUNC MEMORANDUM AND ORDER**

    Plaintiff Eddie Nunez, an inmate at the El Dorado Correctional Facility, claims several of his constitutional rights were violated while in the custody of the Kansas Department of Corrections ("KDOC"), and brings this action under 42 U.S.C. § 1983 against various Defendants for said violations. Defendants argue that Nunez failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") prior to bringing this action, and thus, seek dismissal of Nunez' claims. The Court held an evidentiary hearing on March 9, 2018, relating to whether Nunez exhausted his administrative remedies as argued in Defendants' Motion for Summary Judgment (Doc. 55), and after considering Defendants' motion, as well as the evidence and argument presented at the hearing, the Court is now prepared to rule. For the reasons identified

below, the Court denies Defendants' requests for summary judgment on the basis that Nunez failed to exhaust administrative remedies.¹

## I. Factual and Procedural Background

Nunez has been an inmate in the custody of the KDOC at all times relevant to this lawsuit. In January 2015, he battered a female corrections officer at the Hutchinson Correctional Facility. Following that incident, KDOC personnel seized him, placed him in a holding cell, and transferred him to the El Dorado Correctional Facility, where he was placed on restricted status. Nunez filed this action claiming that Defendants subjected him to excessive force and mistreated him in various ways following the battery. The Court provided a detailed summary of the allegations in Nunez' Complaint in its prior Order (Doc. 62), and incorporates that summary here.

Defendants James Heimgartner, Tammy Martin-Mosley, Roland Potter, Kevin Vick, William Widener, and Allison Plett (the "KDOC Defendants") filed a Motion for Summary Judgment (Doc. 55), on January 9, 2017. The KDOC Defendants presented numerous arguments in favor of dismissal, including that Nunez failed to exhaust administrative remedies. Defendant Morris filed a Motion for Summary Judgment (Doc. 59) on April 25, 2017, but did not set forth

---

¹ The Court issues this Order nunc pro tunc as the Court stated in its prior Memorandum and Order (Doc. 62) that it would hold an evidentiary hearing on the issue of exhaustion of administrative remedies, while at the same time seemingly denying Defendants' motion prior to holding that hearing. By ordering an evidentiary hearing on the issue, the Court intended to take the issue of exhaustion of administrative remedies under advisement, and decide the exhaustion issue after holding an evidentiary hearing, but the record did not clearly reflect this aim—instead, the Court denied summary judgment. Thus, while Defendants were not entitled to summary judgment when the Court issued its ruling, the Court incorrectly denied the motion instead of taking the issue under advisement pending the outcome of the evidentiary hearing. Courts issue nunc pro tunc orders "to show what was actually done but not properly or adequately recorded" or "to correct clerical or ministerial errors or a failure of the court to reduce to judgment what it stated orally or in an opinion." *Oyler v. United States*, 1999 WL 1096045, at *1 (D. Kan. 1999) (citation and quotation omitted). Here, the Court ordered an evidentiary hearing on the failure to exhaust administrative remedies issue and should not have simultaneously denied Defendants' motion on this issue prior to that hearing.

any arguments regarding exhaustion of administrative remedies. On May 24, 2017, the Court denied Morris' motion and granted in part and denied in part the KDOC Defendants' motion.

The Court determined that factual questions existed regarding whether Nunez properly exhausted his administrative remedies as to his § 1983 claims, appointed Nunez counsel, and ordered an evidentiary hearing to resolve the factual questions.[2] In its decision, the Court simultaneously ordered an evidentiary hearing regarding exhaustion under the PLRA and denied the KDOC Defendants' motion for summary judgment on the same issue. The Court acknowledges this inconsistency and issues this Order nunc pro tunc, to the extent the prior Order mistakenly disposed of the entire motion for summary judgment rather than taking the exhaustion issue under advisement pending the outcome of the evidentiary hearing.

The evidentiary hearing regarding exhaustion of administrative remedies took place on March 9, 2018. The Court received testimony from two witnesses during the hearing—Nunez and his unit team manager, Tammy Martin-Mosley—and heard arguments from the parties. Morris orally moved to join in the KDOC Defendants' motion for summary judgment and Nunez did not object. The Court summarizes the evidence introduced below.

*Testimony of Tammy Martin-Mosley ("Martin")*

Martin testified that she served as Nunez' unit team manager at all times relevant to this action. She testified as to the grievance procedure, noting that prior to utilizing the grievance process inmates must attempt to work out their issues on an informal basis with the security staff, unit team staff, mental health staff, medical, or whoever the inmate has an issue with. She

---

[2] Because exhaustion of administrative remedies touches on matters of judicial administration, the Court may address factual issues relating to exhaustion to ensure "litigation is being conducted in the right forum at the right time." *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

explained that inmates typically do this by filing a Form 9, but also noted that inmates commonly utilize a sick call slip to document informal attempts to resolve disputes with private health care employees. Martin testified that the Form 9 is a form provided to inmates that allows them to submit requests to staff members. The Form 9 includes a tear-off portion that serves as a receipt for inmates and includes sections for the name and title of the person given the form, the date, and a unit team member's signature.

If informal means do not successfully resolve the inmate's dispute, then the inmate may engage in a three-level grievance process that includes the following steps: (1) the inmate files a grievance with the unit team, (2) if unresolved at the unit team level, the inmate submits the grievance to the warden, and (3) if still unresolved, the inmate appeals to the Secretary of Corrections ("SOC").[3] At the first level, the unit team manager provides a written response on the grievance form. This form, containing the unit team manager's response, may be submitted to the warden if the dispute remains unresolved. Upon submission to the warden, a member of the warden's office typically assigns the grievance a serial number. Circumstances exist, however, where a grievance may not be assigned a number, such as when it does not comply with the applicable K.A.R. requirements. Grievance forms, like the Form 9, also include a tear-off portion that serves as a receipt to inmates. It states, "[t]ear off and give to inmate when submitted to Unit Team through receiving staff," and contains blanks for the inmate's name, inmate's number, receiving staff signature, and date.

Once detached from the form, whether from a grievance form or Form 9, a tear-off receipt cannot be traced to the specific form to which the receipt was originally affixed. Thus, if an inmate

---

[3] The parties' dispute whether Nunez filed his grievance at the first or second level.

submits multiple Form 9s or grievance forms in one day, there is no way to tell which receipt corresponds with which form. Although technically inmates may only receive up to five Form 9s and three grievance forms on any given day, blank forms are widely available to inmates, and the correctional facility does not record or track how many forms an inmate requests or receives. Accordingly, an inmate could take a blank form, fill out and tear off the receipt, and destroy the original form. As noted above, however, the tear-off receipt includes space for the signature of a prison official.

Martin testified that she did not timely receive the grievance form allegedly filed by Nunez on February 4, 2015. Rather, she first received the grievance after the SOC forwarded it to the warden because it did not appear that Nunez had followed the grievance policy when submitting his appeal to the SOC, and the warden sent it to Martin for response. Martin did not recall when exactly she received the grievance from the SOC, but testified that she responded to the grievance after the SOC rerouted it to the warden. She testified that she received the grievance form along with a letter from Douglas Burris with the SOC's office dated March 13, 2015, sometime in April 2015. The letter includes a date-received stamp indicating that the "Wardens Office" received the letter on April 6, 2015. Martin's response to the grievance is dated April 3, 2015—before the warden's office date stamp. Nunez did not seek further review of Martin's response or otherwise attempt to appeal it.

*Testimony of Nunez*

Nunez testified that he complied with each step in the grievance process. He stated that he submitted a Form 9 as part of the informal process on January 23, 2015, seeking access to his legal materials. Form 9 is titled "Inmate Request to Staff Member," and directs inmates to, "[s]tate completely but briefly the problem on which you desire assistance. (Be specific.)." Nunez testified

that he sought access to his legal work in order to prepare his grievance report form, and that without his legal work he did not have access to proper documentation as to his restrictions and privileges, policies, and general orders to enable him to articulate his complaint.  Nunez received an undated response from an unidentified individual.  The Court did not receive testimony regarding who provided the response; nor did either party submit evidence regarding the conversation, if any, had between Nunez and the person responding to the Form 9 request.

After informally seeking resolution, Nunez filed a grievance form on February 4, 2015, to which he did not receive a timely response.  On February 19, 2015, Nunez sent a letter to the warden attaching a copy of the grievance and Form 9 and stating that he "tried having an informal resolution but request forms go totally un-answered with no receipts and [unit team] manager Martin out-right refuses to speak to me."  After not receiving a response from the warden, Nunez sent an appeal to the SOC on March 10, 2015, attaching the Form 9, grievance form, tear-off receipts, and letter to the warden, and explaining why he was appealing an unanswered grievance with no serial number.  Nunez produced two receipts, allegedly signed by the cell house sergeant in charge of the segregation unit, dated February 4, 2015, and February 20, 2015.  These receipts purportedly correspond to the grievance form submitted to the unit team and to the letter sent to the warden.  Nunez testified that the unit team counselor provided Nunez with copies of his prior filings to enable Nunez to attach these filings to his second and third level appeals.

At some point after March 13, 2015, Nunez received a letter from Douglas Burris on behalf of the SOC.  The letter states that it is a response to Nunez' unnumbered grievance report, and informs Nunez that he failed to provide evidence that he sought "information, advice, or assistance from the unit team before filing a formal grievance," or that he "file[d] a formal grievance with

the principal administrator of the facility before appealing to the Secretary." It also stated that the grievance was being forwarded to the warden and carbon copied the warden.

Nunez testified that he did not receive a response after initially submitting his first and second level grievances, and that he only received a response after appealing to the SOC. He testified that it is fairly routine to have grievances go unanswered. On April 3, 2015, Martin provided him with a response to his February 4, 2015, grievance. Nunez testified that he considered his grievance exhausted as of the time he received the April 3, 2015, response, and accordingly, did not appeal the response. Instead, he filed this lawsuit.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5] When the party moving for summary judgment bears the burden of proof, as opposed to the nonmoving party, "a more stringent summary judgment standard applies."[6] Thus, in order to obtain summary judgment on a moving party's affirmative defense, the moving party "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."[7] Only if the moving party meets this burden

---

[4] Fed. R. Civ. P. 56(c).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).

[7] *Id.* (citations omitted).

must the nonmoving party come forward and "demonstrate with specificity the existence of a disputed material fact."[8] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

### III.     Analysis

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted."[10] Although exhaustion of administrative remedies is mandatory under the PLRA, the failure to exhaust administrative remedies is an affirmative defense.[11] Thus, Defendants bear the burden of asserting and proving that Nunez did not exhaust his administrative remedies.[12] If they meet his burden, however, Nunez may continue this action if he shows that administrative remedies were unavailable to him.[13]

"To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient."[14] "The 'applicable procedural rules' that a prisoner must properly exhaust are defined not by the PLRA, but by the prison grievance process

---

[8] *Hesterlee v. Cornell Cos. Inc.*, 351 F. App'x 279, 281 (10th Cir. 2009) (quotation marks and citation omitted).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[10] 42 U.S.C. § 1997e(a).

[11] *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (citation omitted).

[12] *Tuckel*, 660 F.3d at 1254.

[13] *Id.*

[14] *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007).

itself."[15]  Article 15 of the KDOC regulations (the "KDOC regulations") details the grievance process applicable here.[16]

Under the KDOC regulations, an inmate must first seek an "informal resolution of the matter with the personnel who work with the inmate on a direct or daily basis."[17]  If informal means fail, the inmate may resort to the three-level formal grievance procedure.[18]  At level one, the inmate must submit a "grievance report form to an appropriate unit team member of the facility."[19]  At level two, the inmate submits "the grievance report form to the warden of the facility."[20]  And, if the matter remains unresolved, the inmate may proceed to the third level and submit an appeal to the SOC.[21]

The KDOC regulations include specific deadlines applicable to the grievance procedure. A level-one grievance "shall be filed within 15 days from the date of the discovery of the event giving rise to the grievance, excluding Saturdays, Sundays and holidays."[22]  If the unit team does not respond within 10 calendar days, the inmate may proceed to the second level—submission of the grievance to the warden.[23]  At the second level, "[e]ach inmate grievance shall be returned to

---

[15] *Jones*, 549 U.S. at 200 (quoting *Woodford v. NGO*, 548 U.S. 81, 88 (2006)) (internal citation omitted).

[16] *See Lewis v. Carrell*, 2014 WL 4450147, at *7 (D. Kan. 2014).

[17] K.A.R. § 44-15-101(b).

[18] *Id.*

[19] K.A.R. § 44-15-101(d)(1).

[20] K.A.R. § 44-15-101(d)(2).

[21] K.A.R. § 44-15-101(d)(3).

[22] K.A.R. § 44-15-101b.  The regulations do not impose a time frame within which the inmate must informally seek resolution, but merely state that he must do so "[b]efore utilizing the grievance procedure." K.A.R. § 44-15-101(b).

[23] K.A.R. § 44-15-102(a)(2).

the inmate, with an answer, within 10 working days from the date of receipt," and if the warden fails to provide a timely response, the inmate may appeal to the SOC.[24] An appeal to the SOC must be made within the earlier of (a) three calendar days of receipt of the warden's decision or (b) three calendar days of the deadline for the warden's decision.[25]

The KDOT Defendants advance three arguments in favor of dismissal for failure to exhaust administrative remedies: (1) Nunez never submitted a first or second level grievance, (2) Nunez failed to appeal Martin's April 3, 2015, response to his level-one grievance, and (3) Nunez' Form 9 does not address the claims asserted in this lawsuit, and thus, Nunez failed to satisfy the requirement to seek informal resolution of his claims prior to engaging in the three-level grievance process. Morris joined in these arguments and further argued that Nunez failed to submit a sick call request form as is typically used to informally resolve disputes with private medical contractors, and thus, failed to exhaust administrative remedies as to his claims against Morris.[26]

Nunez argues that he complied with all steps required under Kansas law to exhaust administrative remedies, that the law did not require him to continue at the administrative level after receiving his unit team leader's response over two months after filing his first level grievance, and that Defendants did not preserve their final argument—that the Form 9 did not encompass the claims in this lawsuit—or alternatively, that Defendants deprived him of the ability to include the allegations of this lawsuit in his Form 9 by denying him access to legal materials.

---

[24] K.A.R. § 44-15-102(b)(3)(ii), (c)(1).

[25] K.A.R. § 44-15-102(c)(1).

[26] Because Morris has joined in the arguments advanced by the KDOC Defendants, the Court will only distinguish between the KDOC Defendants and Morris when arguments or concessions do not apply to all Defendants.

**A.      Defendants have failed to establish that Nunez did not submit his grievance at either the first or second level.**

Defendants argue that Nunez did not file a first or second level grievance prior to appealing his grievance to the SOC. They submit affidavits from KDOC administrative assistants claiming that Nunez' appeal records do not include the grievance Nunez claims he filed, and Martin testified that she did not receive a grievance from Nunez until April 2015, when the SOC forwarded Nunez' grievance to the warden. Nunez, on the other hand, testified that he complied with each requirement of the grievance process, including timely submitting the first and second level grievances, and that he received no response. In support, he produced two receipts signed by KDOC personnel that allegedly document the submission of his first and second level grievances.

Defendants argue that it is impossible to match receipts with their corresponding forms, note that forms are widely accessible to inmates, and suggest that Nunez could have taken a form, prepared the receipt, and destroyed the blank form. In other words, Defendants imply that Nunez fabricated the receipts in question, or at least, that those receipts do not correspond with the filings he alleges. Defendants, however, do not challenge the purported signatures of the prison official contained on the receipts produced by Nunez; nor do Defendants identify any other form Nunez filed to which the signed receipts may correspond. Further, that the tear-off receipts cannot be traced to a specific form weighs against Defendants as it is the KDOC's system that precludes such tracking. Indeed, Nunez had no control over the forms after submitting them, could not assign his grievance a serial number, and appears to have had no other way to demonstrate that he properly filed his grievances aside from these receipts. The Court declines to require Nunez to offer further proof that he submitted his grievances as alleged. Doing so would not only shift the burden on this issue from Defendants to Nunez, but would also allow the KDOC to benefit from its

implementation of a system where it is impossible to match receipts to the corresponding forms and then fault inmates for not being able to demonstrate to which form their receipts were originally affixed.

Further, Nunez presented evidence suggesting that the correctional facility did in fact possess his grievance prior to the SOC's letter forwarding it to the warden. Martin testified that she first received the February 4, 2015, grievance in April 2015—*after* the SOC had forwarded it to the warden's office—and that she responded to the grievance on April 3, 2015. The letter forwarding Nunez' grievance, however, contains a date-received stamp indicating that the warden's office received it on April 6, 2015. Nunez argues that the fact Martin responded to his grievance *before* the warden received it from the SOC further demonstrates that he properly submitted his grievance. During the hearing, the KDOC Defendants proposed hypothetical explanations as to why Martin responded to the grievance before the April 6, 2015, date-stamp, but admitted that they could not explain this apparent discrepancy.

In light of the above, the Court concludes that Defendants have not met their burden to show that Nunez failed to follow the prescribed grievance procedures by failing to submit either a first or second level grievance.

**B.      Defendants have not established that Nunez failed to exhaust his administrative remedies by failing to appeal Martin's April 3, 2015, response to his grievance.**

The parties do not dispute that Martin responded to Nunez' February 4, 2015, grievance on April 3, 2015. Rather, they dispute whether Nunez should have continued the grievance process at that point. Defendants point to no law requiring Nunez to re-engage in the grievance procedure,

assuming he properly complied with it the first time around.[27]  Rather, Defendants argue that whether proceeding in the grievance process was optional or mandatory, he did not further pursue the grievance process when given the opportunity.  Whether a plaintiff has the option to engage in further attempts to settle a dispute prior to filing a lawsuit, however, differs significantly from whether the law requires the plaintiff to engage in such further attempts to satisfy an exhaustion of administrative remedies requirement.

When analyzing whether an inmate has exhausted administrative remedies, Courts must "ensure that any defects in exhaustion were not procured from the action or inaction of prison officials."[28]  Indeed, a prison official's "failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable."[29]  Here, assuming Nunez filed his grievances as alleged, Nunez complied with the grievance policy, and the alleged breakdown in the administrative procedure resulted from prison officials' alleged inaction.  Defendants have identified no Kansas law requiring Nunez to start the grievance process anew because the KDOC officials failed to perform their obligations under the grievance procedure.  Nor has the Court located any such requirement.[30]  Instead, Defendants point to caselaw involving other states' grievance procedures and argue that Nunez failed to exhaust his

---

[27] Defendants' argument appears premised on Nunez' alleged failure to submit his grievance to the unit team and warden in the first place, and that the unit team first received the grievance in April 2015.  As explained above, the Defendants have failed to meet their burden of proof that Nunez did not submit a first or second level grievance.  When asked whether the KDOC regulations required Nunez to start the process over when Martin provided a response, assuming that Nunez had in fact submitted his first, second, and third level grievances as alleged, the KDOC Defendants responded that they were not sure whether the KDOC regulations required Nunez to do so.

[28] *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

[29] *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citations omitted).

[30] *See generally* K.A.R. § 44-15-101 *et seq.*

administrative remedies by failing to correct any deficiencies after receiving Martin's response. Again, Defendants' argument appears premised on a presumption that *Nunez'* actions were somehow deficient. Nunez has presented evidence suggested that he fully complied with *his* obligations under the KDOC grievance procedure.

Defendants cite *Jernigan v. Stuchell*,[31] in support of their argument. In *Jernigan*, the Tenth Circuit recognized that a failure to respond to an inmate's grievance within the allotted time limits renders the administrative remedy unavailable, but affirmed the lower court's dismissal for failure to exhaust administrative remedies because the inmate failed to cure an alleged deficiency in his grievance when given a 10-day period to correct the deficiency.[32] There, the inmate alleged that prison officials lost or misfiled his grievance, but apparently did not include this fact in his appeal to the reviewing authority. The reviewing authority returned his grievance as improperly filed and provided him 10 days to cure the deficiency. Jernigan failed to take further action. Although not apparent from the face of the *Jernigan* decision, the Oklahoma Department of Corrections ("ODOC") grievance procedure explicitly contemplates, as part of the grievance process, that the reviewing authority will provide inmates an opportunity to correct any errors and properly resubmit an appeal when it appears to have been improperly submitted.[33] Indeed, two of the cases cited by Defendants involve the 10-day cure window contemplated by the ODOC grievance

---

[31] 304 F.3d 1030.

[32] *Id.* at 1032-33.

[33] *See* Oklahoma Department of Corrections, *Inmate/Offender Grievance Process*, OP-090124, available at http://doc.ok.gov/programs-09 ("The reviewing authority will notify the inmate/offender when a grievance is submitted improperly. The inmate/offender will be given one opportunity to correct any errors and properly resubmit within ten (10) days . . . If the inmate/offender fails to correct the errors or properly resubmit, . . . . the inmate/offender will have waived/forfeited the opportunity to proceed in the grievance process.").

procedure,[34] and other cases recognize the existence of this cure period as part of the grievance procedure.[35] Additionally, the Tenth Circuit noted that Jernigan did not attempt to cure, "which no doubt would have involved informing prison officials of the lost or misfiled grievance."[36]

Here, Nunez received a letter from the SOC informing him that he failed to satisfy the first two levels of the grievance process and informing him that his grievance was being sent to the warden. The letter did not instruct Nunez to file another grievance, further pursue his grievance at the first levels, or take any further action on his grievance; nor did it give him a "cure" period. Further, unlike the inmate in *Jernigan*, Nunez attached to his appeal copies of his prior filings, including receipts for these filings, and indicated that his prior grievances were ignored. The KDOC regulations provide that "[i]f the warden did not respond in a timely manner, the form shall be accepted by the secretary."[37] Nunez has presented evidence that he properly followed the KDOC process and that any deficiency in the administrative process resulted not from his actions, but from those of the applicable prison officials. Based on these material differences, especially in light of the cure period contemplated by the ODOC regulations and not by the KDOC regulations, the Court finds the current situation materially distinguishable from *Jernigan*. The

---

[34] *See Jernigan*, 304 F.3d at 1032-33; *Starks v. Lewis*, 313 F. App'x 163, 165 (10th Cir. 2009) (finding that an inmate failed to exhaust administrative remedies when the administrative review authority advised the inmate that his grievance failed to recommend a definite action to be taken, as required by the grievance procedure, and he failed to correct the grievance within the 10-day window provided).

[35] *See, e.g.*, *Craft v. Global Expertise in Outsourcing*, 2014 WL 4699614, at *2 n.22 (W.D. Okla. 2014); *Smith v. Jones*, 2014 WL 5448890, at *11-19 (W.D. Okla. 2014); *Eastham v. Jones*, 2013 WL 5972431, at *6 (W.D. Okla. 2013); *Thomas v. Parker*, 2011 WL 996788, at *4 (W.D. Okla. 2011).

[36] *Jernigan*, 304 F.3d at 1032.

[37] K.A.R. § 44-15-102(c)(4).

remaining cases cited by Defendants also do not involve the KDOC regulations and are easily distinguishable as in each case, the inmate failed to properly follow the applicable procedures.[38]

Nunez alleges and has provided evidence to suggest that he complied with the grievance procedure at all levels and that his unit team and warden failed to provide timely responses to his grievance. Defendants have not met their burden to show otherwise. Viewing the evidence in the light most favorable to Nunez, which the Court must, it is reasonable to conclude that any breakdown in the grievance process resulted not from Nunez' actions, but from prison officials' actions. Nunez has presented evidence to suggest that the prison officials failed to respond to his grievance within the time limits allotted, rendering the administrative remedy under the KDOC regulations unavailable.[39] Defendants are not entitled to judgment as a matter of law.

### C.     Defendants are not entitled to judgment based on their variance argument.

Defendants' third argument in favor of dismissal of Nunez' claims focuses on the content of the Form 9 submitted by Nunez. Specifically, Defendants argue that Form 9 in no way relates to the factual allegations underlying this lawsuit, and thus, argue that Nunez failed to properly complete the grievance process. Nunez contends that Defendants have waived any argument based on variance by failing to assert it in their motions for summary judgment.

---

[38] *Pinson v. Berkebile*, 528 F. App'x 822, 825-86 (10th Cir. 2013) (recognizing that the inmate admitted to not filing an administrative appeal); *Hemphill v. Jones*, 343 F. App'x 329, 331-32 (10th Cir. 2009) (noting that the inmate did not allege that he took an action in accordance with the grievance procedure which allows an inmate "who has not received a timely response to send a grievance to the administrative review authority with evidence of submission of the grievance and the sole assertion the inmate's grievance was not answered"); *Smith v. Beck*, 165 F. App'x 681, 684-85 (10th Cir. 2006) (recognizing that prison officials' alleged failure to respond to a grievance does not excuse an inmate's failure to exhaust administrative remedies when the grievance policies allow a grievance to continue even if a response is not received at a lower level); *Feuer v. McCollum*, 2004 WL 2278569, at *7 (D. Kan. 2004) (finding that plaintiff failed to follow proper procedures in appealing responses to grievances and did not complete the four-step grievance procedure with regard to any of the grievances at issue).

[39] *See Jernigan*, 304 F.3d at 1032.

Generally, a party waives issues and arguments not raised in its motion for summary judgment.[40] Indeed, the KDOC Defendants concede that if they did not raise this issue in their original motion for summary judgment, then they have waived it. The Court has reviewed the KDOC Defendants' motion for summary judgment and concludes that it does not argue for dismissal based on an alleged failure to satisfy the informal dispute resolution requirement or properly complete the Form 9. Rather, the KDOC Defendants argue that Nunez failed to "exhaust his administrative remedies when he failed to file a formal grievance with the Warden," and that even if he submitted the letter and formal grievance to the warden, two legal deficiencies remain: (1) he submitted the February 4, 2015, grievance beyond the 15-day time limit for filing a grievance, and (2) although Nunez started the grievance process, he did not complete it, as he failed to appeal Martin's April 3, 2015, denial of his grievance. While KDOC Defendants briefly mention that Nunez filed a Form 9 regarding access to legal work in their recitation of the facts, they made no argument relating to the inadequacy of the Form 9. Accordingly, the KDOC Defendants cannot pursue this legal argument here.[41]

---

[40] *See Gutierrez v. Cobos*, 841 F.3d 895, 902-03 (10th Cir. 2016); *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011).

[41] The Court also notes that even though the Form 9 does not specify the factual basis underlying this dispute, Defendants have pointed the Court to no law requiring such detailed documentation at the informal resolution stage. The KDOC regulations clearly identify information that the *grievance report form* must include. *See* K.A.R. § 44-15-102(b). *See also* Exhibit 7 (including the following instruction: "BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary...."). The KDOC regulations addressing the *informal resolution requirement*, on the other hand, do not list any information that an inmate is required to include in documenting his attempt to informally resolve the matter, but rather state, "[b]efore utilizing the grievance procedure, the inmate shall be responsible for attempting to reach an informal resolution of the matter .... That attempt shall be documented. The facility's inmate request forms may be used to document this process." *See* K.A.R. § 44-15-101(b). One Kansas court has recognized that a document simply stating that the inmate attempted to reach an informal resolution of the problem on a specific date and at a specific time, but without describing the problem the inmate attempted to resolve, sufficed under the circumstances. *See Davis v. Roberts*, 384 P.3d 1028 (Kan. Ct. App. 2016) (unpublished).

    The KDOC regulations do not specify what level of detail inmates must include regarding their grievance when they are documenting their informal attempts to seek resolution, and no party has introduced any evidence regarding the exchange, if any, between Nunez and the person that responded to the Form 9. Indeed, neither party

### IV.     Conclusion

Defendants have failed to demonstrate that there is no genuine issue as to any material fact, and that Nunez failed to exhaust his administrative remedies as a matter of law.  Nunez has presented evidence suggesting that he fully complied with his obligations under the KDOC grievance procedure and that any breakdown within the grievance process resulted from prison officials' actions or inactions.  Accordingly, the Court denies the KDOC Defendants' motion for summary judgment to the extent it seeks dismissal for failure to exhaust administrative remedies, and denies Morris' oral motion for dismissal of Nunez' claims against Morris on the basis of exhaustion of administrative remedies.

**IT IS THEREFORE ORDERED** that the KDOC Defendants' Motion for Summary Judgment (Doc. 55) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Morris' March 9, 2018, oral motion for dismissal of Nunez' claims against Morris for failure to exhaust administrative remedies is **DENIED**.

---

presented evidence regarding who provided the undated response to Nunez' request on the Form 9.  Without this evidence, the Court cannot conclude as a matter of law that Defendants demonstrated that Nunez did not seek to informally resolve the claims presented in this case with the unidentified individual responding to the Form 9.  Defendants bear the burden to prove their affirmative defense, and the Court will not interpret the lack of evidence surrounding the informal resolution process in Defendants' favor.

  Finally, Morris' argument that Nunez should have submitted a sick call slip, as this is the "typical" manner in which grievances against private contractors of medical services are informally handled, fails to demonstrate that a sick call slip must be submitted before filing a formal grievance.  Accordingly, this additional argument also fails.

**IT IS SO ORDERED**.

Dated this 22nd day of March, 2018.

                                                    ERIC F. MELGREN
                                                  UNITED STATES DISTRICT JUDGE